IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATHAN JAMES ARENTSEN,<br><br>          Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, NEBRASKA DEPARTMENT OF HEALTH & HUMAN SERVICES, BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, UNIVERSITY OF NEBRASKA, UNIVERSITY OF NEBRASKA - LINCOLN, PARADIGM, INC., JENDA FAMILY SERVICES, and ABBIE MARIE LOCKEN,<br><br>          Defendants. | 4:23CV3131<br><br>MEMORANDUM AND ORDER |

Plaintiff Nathan James Arentsen, a non-prisoner, has been given leave to proceed in forma pauperis. Filing 6. The Court now conducts an initial review of Plaintiff's Complaint, Filing 1, to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). In conjunction with this review, the Court will also consider the Motion to Dismiss filed by Defendant Jenda Family Services. Filing 7.

## I. SUMMARY OF COMPLAINT

Plaintiff filed his Complaint on July 19, 2023, seeking damages against the State of Nebraska, Nebraska Department of Health and Human Services ("DHHS"), the Board of Regents of the University of Nebraska ("Board of Regents"), the University of Nebraska ("University"), the University of Nebraska-Lincoln ("UNL"), three DHHS contractors—Paradigm, Inc.

("Paradigm"), Omni Inventive Care ("Omni"), and Jenda Family Services, LLC ("Jenda")—and a therapist employed at Paradigm, Abbie Locken ("Locken") (collectively "Defendants"). Liberally construed, Plaintiff asserts a 42 U.S.C. § 1983 claim for violation of his Fourteenth Amendment rights, as well as violations of various federal statutes, namely 20 U.S.C. § 1681, 42 U.S.C. §§ 2000d et seq., and 42 U.S.C. § 18116. Filing 1 at 5. Plaintiff also alleges claims under state law for "assault, battery, false imprisonment, negligence, negligent training, negligent hiring, negligent retention, negligent infliction of em[o]tional distress, and intentional infliction of emotional distress." *Id*.

Plaintiff's factual allegations are sparse and somewhat vague. As best the Court can tell, Plaintiff received unspecified services from DHHS, Omni, Paradigm, and Jenda from May 2019 to October 2019. Filing 1 at 8. During that time, Plaintiff alleges employees of DHHS, Omni, and Paradigm "inflicted emotional distress upon [Plaintiff]" by "prohibiting Plaintiff from discussing past domestic violence perpetrated against Plaintiff, instructing Plaintiff to make certain legal filings on behalf of others despite Plaintiff's statement that he did not wish to do so, discouraging Plaintiff from making other legal filings which Plaintiff had the right to make, and threatening Plaintiff's custody of his child." *Id*. In addition, a female employee of Jenda "instructed Plaintiff to be more of a 'man' by focusing on his employment, leaving childcare to his then-wife, and living as 'a traditional family' in which a man goes to work and a woman stays home and raises a child." *Id*.

The primary misconduct Plaintiff alleges is attributed to Defendant Locken. On or about September 1, 2019, Plaintiff alleges Locken sexually assaulted him on the couch inside Plaintiff's home during a session of Intensive Family Preservation ("IFP") treatment, which Locken and Paradigm were contracted by DHHS to provide to Plaintiff. *Id*. Plaintiff further alleges that

2

Locken "mocked, insulted, and otherwise subjected Plaintiff to emotional distress, including . . . referring negatively to Plaintiff's gender and sexual capability." *Id*. "Locken also told Plaintiff to 'move on' from discussing the domestic violence perpetrated against Plaintiff" and admitted to Plaintiff "that she herself had previously perpetrated domestic violence against the father of her own child." *Id*. Based on her conduct and admission, Plaintiff alleges DHHS and Paradigm failed to properly train Locken regarding domestic violence and negligently hired, retained, contracted, and licensed Locken.

Plaintiff also accuses Paradigm, Omni, and Jenda of failing to properly train their employees regarding domestic violence and to properly screen their employees for such training and education. Plaintiff appears to allege that the DHHS, Paradigm, Omni, and Jenda employees involved in his claims received training from the Center on Children, Families, and the Law ("CCFL") at UNL which instructed the employees "to dismiss, ignore, and be suspicious of men who claim to be victims of domestic violence and to otherwise discriminate against and refuse to assist men in the context of domestic violence." *Id*.

Finally, Plaintiff alleges that "[f]rom August 26, 2020 until the present, employees of DHHS, the University of Nebraska-Lincoln, and the Nebraska Children's Commission[1] subjected Plaintiff to emotional distress when Plaintiff sought to inform them about the above-stated misconduct" by

> refusing to discuss or accept Plaintiff's complaints, retaliating against Plaintiff in order to prevent Plaintiff from making complaints, shouting at Plaintiff over the phone, threatening to hang up on Plaintiff, refusing to provide necessary information to Plaintiff despite past promises to do so, refusing to allow Plaintiff to meet with or present materials to relevant authorities, and refusing to convey Plaintiff's complaints to relevant state and local officials.

---

[1] The Nebraska Children's Commission is not listed as a defendant in the Complaint, and Plaintiff does not provide any identifying information about this entity.

3

*Id.* at 8–9.

As a result of the events described in his Complaint, Plaintiff alleges he sustained injuries as "evidenced by Plaintiff's diagnosis on February 10, 2021 with major depression due to trauma and Plaintiff's continued suffering from that condition" and the "substantial" impact on his personal and professional life. *Id.* at 9. Plaintiff alleges he "has properly filed all necessary state tort claims regarding those injuries." *Id.*

## II. LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at

4

849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

As explained below, Plaintiff's Complaint fails to state a claim upon which relief may be granted against any of the named Defendants under any federal basis for relief cited by Plaintiff, and the Court lacks jurisdiction over Plaintiff's state-law tort claims. Plaintiff, however, will be given leave to amend his Complaint.

**A. University and UNL Not Proper Defendants**

As an initial matter, Plaintiff has named the University and UNL as defendants in this action, but neither defendant is a proper party as they do not have the capacity to sue or be sued under Nebraska law. Federal Rule of Civil Procedure 17(b) "defines when a party has the capacity to sue or be sued in federal court." *Lundquist v. Univ. of S. Dakota Sanford Sch. of Med.,* 705 F.3d 378, 379 (8th Cir. 2013). "Unless the party is 'an individual who is not acting in a representative capacity' or a corporation, 'the law of the state where the court is located' determines whether an entity has the ability to sue or be sued." *Libault v. Mamo,* No. 4:22-CV-3096, 2023 WL 3011259, at *4 (D. Neb. Mar. 20, 2023), *aff'd*, No. 23-1802, 2023 WL 6532621 (8th Cir. Oct. 6, 2023) (quoting Fed. R. Civ. P. 17(b)(1)–(3)).

As relevant here,

5

> The Nebraska Constitution provides that "[t]he general government of the University of Nebraska shall, under the direction of the Legislature, be vested in a board of not less than six nor more than eight regents to be designated the Board of Regents of the University of Nebraska, . . . ." Neb. Const. art. VII, § 10; *see* Neb. Rev. Stat. § 85-103. UNL is one of four universities that comprise the University of Nebraska. Neb. Rev. Stat. §§ 85-101, 85-102.[0]1. The Board of Regents is "a body corporate" and has the power to sue and be sued. Neb. Rev. Stat. § 85-105.

*Doe v. Univ. of Nebraska*, No. 4:18CV3142, 2021 WL 424632, at *3 (D. Neb. Feb. 8, 2021). Plaintiff has named the Board of Regents as a defendant in this action, which is clearly the proper defendant for any claims he has against the University and UNL. Because the University and UNL do not have statutory authority to sue or be sued in their own names, the Court will dismiss them as parties to this action and construe Plaintiff's claims as brought only against the Board of Regents.

**B. 42 U.S.C. § 1983**

Plaintiff identifies 42 U.S.C. § 1983 as a basis for his federal claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). Liberally construed, Plaintiff appears to assert a substantive due process claim under section 1983 against the State of Nebraska, DHHS, Paradigm, and Locken[2] for the violation of his constitutionally protected right to be free from bodily harm, sexual assault, and abuse. *See Hawkins v. Holloway*, 316 F.3d 777, 784 (8th Cir. 2003) ("an actionable claim under § 1983 for a substantive due process violation may

---

[2] For purposes of this initial review, the Court assumes Paradigm and Locken, as well as Omni and Jenda, are state actors based on Plaintiff's allegations that they were contractors for DHHS.

6

accrue where a public official engages in sexual fondling and touching or other egregious sexual contact under color of state law" (internal quotation marks and citation omitted)); *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999) (noting that "'[a] number of circuit courts have found due process violations when state actors have inflicted sexual abuse on individuals'" (quoting *Rogers v. City of Little Rock, Arkansas*, 152 F.3d 790, 795 (8th Cir.1998))); *Doe ex rel. Doe v. Barger,* 193 F. Supp. 2d 1112, 1117 (E.D. Ark. 2002) (student at state school for the deaf stated substantive due process claim under section 1983 against employee and superintendent of school in their individual capacities when plaintiff asserted violation of his constitutional right to be free from "bodily harm and sexual molestation and abuse").

To establish a substantive due process violation, a plaintiff must show that the defendant violated one or more fundamental constitutional rights and that the defendant's conduct was shocking to the contemporary conscience. *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007). "In order to succeed, a complaint for a violation of substantive due process rights must allege acts that shock the conscience, and merely negligent acts cannot, as a constitutional matter, do that: To hold otherwise would trivialize the centuries-old principle of due process of law." *S.S. v. McMullen,* 225 F.3d 960, 964 (8th Cir. 2000) (internal quotation marks and citation omitted). Further, "gross negligence is not actionable . . . under § 1983." *Id.* (internal quotation marks and citation omitted). "Conduct that is intended to injure in some way unjustifiable by any government interest is likely to be conscience shocking." *Rogers,* 152 F.3d at 797 (internal quotation marks and citation omitted).

Here, Plaintiff has a constitutional right to intimate bodily integrity, *Rogers,* 152 F.3d at 797, which he alleges was violated when Locken sexually

7

assaulted Plaintiff in his home during an IFP treatment session that Locken had been contracted by DHHS to provide. Such allegations sufficiently allege a substantive due process claim against Locken. However, Plaintiff fails to state a claim against the State of Nebraska, DHHS, and Paradigm because there are no allegations that any of these defendants had notice of a pattern of unconstitutional conduct by Locken. *Doe v. Gooden,* 214 F.3d 952, 956 (8th Cir. 2000) (to hold superintendent and former assistant superintendent of schools liable under section 1983 for physically abusive conduct by teacher, there must be showing superintendents had notice of pattern of unconstitutional acts; "[m]ere negligence in failing to respond does not implicate the Fourteenth Amendment").

Moreover, Plaintiff's section 1983 claim cannot proceed against the State of Nebraska, DHHS, Paradigm, nor even Locken, as his claim for damages is barred by the State's Eleventh Amendment sovereign immunity. Because Plaintiff failed to "expressly and unambiguously" state that Locken is sued in her individual capacity, the Court "assume[s] that the defendant is sued only in . . . her official capacity." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999). The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.,* 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.,* 64 F.3d at 447; *Nevels v. Hanlon,* 656 F.2d 372, 377–78 (8th Cir. 1981). There is nothing in the record before the Court showing that the State of Nebraska

8

waived, or that Congress overrode, sovereign immunity in this matter with respect to Plaintiff's section 1983 claim. Thus, the Eleventh Amendment bars Plaintiff's claims for damages against the State of Nebraska, DHHS, Paradigm, and Locken in her official capacity. Similarly, to the extent Plaintiff seeks to assert any section 1983 claims against the remaining defendants, the Board of Regents, Omni, and Jenda, such claims for damages are barred by sovereign immunity.

On the Court's own motion, Plaintiff will be given leave to amend his Complaint to allege his substantive due process claim against Locken in her individual capacity.

**C. Title VI, 42 U.S.C. §§ 2000d *et seq*.**

Plaintiff cites to Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d *et seq*., as grounds for his claims against the defendants. Title VI prohibits discrimination on the basis of race in federally-funded programs. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). To plausibly plead a Title VI discrimination claim, a plaintiff must show that "his race, color, or national origin motivated the defendant's discriminatory conduct." *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 355 (8th Cir. 2020). "The discriminatory motive may be pleaded by making allegations 'giving rise to an inference that [the plaintiff] has been intentionally discriminated against because of [his] race [color, or national origin].'" *Libault*, 2023 WL 3011259, at *7 (quoting *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019)).

Here, Plaintiff has not pleaded any facts to suggest that his race, color, or national origin played any part in Defendants' alleged misconduct against

9

him. In fact, Plaintiff has not pleaded any facts regarding his race, color, or national origin whatsoever. As such, Plaintiff has failed to state a plausible Title VI claim.

**D. Title IX, 20 U.S.C. § 1681**

Plaintiff also lists Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, as a basis for his claims against Defendants. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

> The plain text of 20 U.S.C. § 1681(a) provides protection for persons from actions taken "on the basis of sex" only if it causes the prospective plaintiff to be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Therefore, if the action taken "on the basis of sex" against the person did not exclude, deny, or subject the person to discrimination under an education program or activity, then the action cannot be brought under § 1681(a).

*Rossley v. Drake Univ.*, 958 F.3d 679, 684 (8th Cir. 2020).

Even under the most liberal construction, Plaintiff has not alleged any facts suggesting he was "excluded from participation in, . . . denied the benefits of, or . . . subjected to discrimination under any education program or activity" offered by Defendants. The only reference to an education program or activity in the Complaint is Plaintiff's allegation that the CCFL at UNL provided domestic violence training materials to DHHS, Paradigm, Omni, and Jenda employees that were discriminatory towards men. While the training provided by the CCFL and UNL may be an education program or activity within the meaning of Title IX as to the DHHS, Paradigm, Omni, and Jenda employees receiving the training, nothing in the Complaint suggests that it was an

10

education program or activity *to Plaintiff* as he does not allege that he participated in, sought to participate in, or was in any way involved in the training. *See Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 973 (S.D. Iowa 2018), *aff'd*, 958 F.3d 679 (8th Cir. 2020) (Former university board of trustees member failed to state Title IX retaliation claim against university alleging retaliation for complaining of purported sex discrimination in university's Title IX investigation of his son, because, inter alia, son's Title IX hearing was not educational activity to former member). Rather, Plaintiff's allegations regarding the allegedly discriminatory training appear to be offered as support for Plaintiff's claims that DHHS, Paradigm, Omni, and Jenda failed to properly train their employees. In any case, Plaintiff has failed to plausibly allege that he was subjected to discrimination under an education program or activity offered or administered by Defendants, and, thus, his Title IX claim fails.

**E. Patient Protection and Affordable Care Act, 42 U.S.C. § 18116**

Plaintiff's final federal cause of action is brought pursuant to 42 U.S.C. § 18116, otherwise known as Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"). Section 1557 prohibits discrimination and the denial of benefits on the basis of race, color, national origin, sex, age, or disability "under any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). Private individuals may sue to enforce the antidiscrimination provisions in Section 1557. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022). "Section 1557 expressly incorporates four federal civil rights statutes, which outline the protected grounds of discrimination: race, color, and national origin (under Title VI); sex (under Title IX); age (under the ADEA); and disability (under the Rehabilitation act)." *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 952 (D. Minn. 2018) (citing 42 U.S.C. § 18116(a)). Thus, "a plaintiff bringing a

11

Section 1557 claim must essentially plead a corresponding civil rights statute predicate," and the standard and burden of proof applicable to the predicate civil rights statute governs the plaintiff's Section 1557 discrimination claim. *Id.* (citing *Se. Pennsylvania Transp. Auth. v. Gilead Scis., Inc.*, 102 F.Supp.3d 688, 696 (E.D. Pa. 2015)).

Here, Plaintiff appears to claim Defendants discriminated against him on the basis of sex in violation of Section 1557. As mentioned above, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. To state a sex discrimination claim under Section 1557, Plaintiff must allege: "(1) [Each] Defendant is a health program that receives federal financial assistance; (2) Plaintiff was excluded from participation in or denied the benefit of the program; and (3) the exclusion was on a ground prohibited by Title IX, that is—it was on the basis of sex." *Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956, 963–64 (E.D. Mo. 2022).

Upon review, the Court concludes Plaintiff has failed to state a claim under Section 1557 upon which relief may be granted against any of the Defendants. First, Plaintiff's allegations fail to demonstrate that any Defendant is a health program or activity within the meaning of Section 1557.[3] As far as the Court can tell, Defendants DHHS and the DHHS contractors Paradigm, Omni, and Jenda were providing family preservation services or

---

[3] To the extent Plaintiff may seek to hold Locken liable under Section 1557 in her individual capacity, the Court seriously doubts that Locken would be a proper Section 1557 defendant as it is difficult to see how an individual could qualify as a health program or activity receiving federal financial assistance. Moreover, Title IX, the civil rights predicate statute for Plaintiff's Section 1557 claim, "'prohibits discrimination by federal grant recipients,' but does not 'authoriz[e] suit against . . . individuals.'" *Libault*, 2023 WL 3011259, at *6 (quoting *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) and *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)).

perhaps domestic violence support services to Plaintiff. Without any factual context regarding the nature or circumstances of these services, the Court cannot reasonably infer whether these Defendants are a health program or activity within the meaning of Section 1557. Moreover, Plaintiff does not allege that the Board of Regents, the University, or UNL were involved in the provision of any of these possible health-related services to Plaintiff, and there are no facts from which it can be inferred that Section 1557's antidiscrimination provisions apply to these Defendants.

Additionally, Plaintiff has not alleged that any Defendants receive federal financial assistance. With no allegations regarding Defendants' receipt of federal financial assistance, the Court cannot determine whether any of these state, state agency, and state contractor Defendants waived sovereign immunity. *See Espino v. Regents of the Univ. of California,* 666 F. Supp. 3d 1065, 1083 (C.D. Cal. 2023) ("Because Section 1557 of the ACA prohibits discrimination against an entity receiving federal assistance, multiple courts, including the Fourth Circuit and at least one district court within this Circuit, have found that a public entity waives state sovereign immunity from ACA antidiscrimination liability upon acceptance of federal funding pursuant to the [Civil Rights Remedies Equalization Act]'s terms.") (citing *Kadel v. N.C. State Health Plan Teachers & State Emps.,* 12 F.4th 422, 439 (4th Cir. 2021), *as amended* (Dec. 2, 2021); *Concepcion v. Cal. Dep't of Corr. & Rehab.*, No. 1:18-cv-01743-NONE-JLT (PC), 2021 WL 1516401, at *11 (E.D. Cal. Apr. 16, 2021), *adopted in its entirety by* 2021 WL 3488120 (E.D. Cal. Aug. 9, 2021); *Boyden v. Conlin,* 341 F. Supp. 3d 979, 998–99 (W.D. Wis. 2018)). Thus, in the absence of allegations that any Defendants received federal financial assistance, Plaintiff has failed to state a claim under Section 1557. Plaintiff will be given leave to

amend his Complaint to allege plausible claims for relief under Section 1557, as well as Title VI and Title IX, as set forth below.

**F. State-Law Claims**

Lastly, Plaintiff asserts various tort claims under Nebraska law against Defendants, namely "assault, battery, false imprisonment, negligence, negligent training, negligent hiring, negligent retention, negligent infliction of em[o]tional distress, and intentional infliction of emotional distress." Filing 1 at 5. As Plaintiff is suing the State of Nebraska, state entities (DHHS and the Board of Regents), and various state contractors (Paradigm, Omni, Jenda, and Locken), his state-law tort claims are governed by the Nebraska State Tort Claims Act ("STCA"), Neb. Rev. Stat. §§ 81-8,209, *et seq.*, which provides in part: "The State of Nebraska shall not be liable for the torts of its . . . employees, and no suit shall be maintained against the . . . employee . . . on any tort claim except to the extent, and only to the extent, provided by the State Tort Claims Act." Neb. Rev. Stat. § 81-8,209. A "tort claim" under the STCA is "any claim against an employee of the state for money only on account of . . . personal injury . . . caused by the negligent or wrongful act or omission of the employee while acting within the scope of his or her employment." Neb. Rev. Stat. § 81-8,210(4). Here, Plaintiff's claims are clearly based on actions taken by Defendants and their employees during the course and scope of their employment with the state. Therefore, Plaintiff is limited to asserting state-law claims against Defendants under the STCA.

"Section 81-8,209 of the STCA bars tort claims against the State, its agencies, and its employees unless the State has waived its immunity for the claim." *Davis v. State of Neb.*, 902 N.W.2d 165, 180 (Neb. 2017). The STCA grants exclusive jurisdiction over those claims to "the district court of the county in which the act or omission complained of occurred . . . ." Neb. Rev.

14

Stat. § 81-8,214. Consequently, any waiver of the State's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Montin v. Moore*, 846 F.3d 289, 293 (8th Cir. 2017); *see Carter v. Muldoon*, No. 8:17CV319, 2018 WL 2049841, at *6 (D. Neb. May 1, 2018) (no subject-matter jurisdiction over STCA claim); *Guerry v. Frakes*, No. 8:15CV323, 2016 WL 4991501, at *3 (D. Neb. Sept. 16, 2016) (dismissing without prejudice state-law claims alleged against NDCS and NDCS employees in their official capacities). "State sovereign immunity bars actions in federal court regardless of the basis for otherwise appropriate subject matter jurisdiction." *Montin*, 846 F.3d at 293; *see Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002) (holding the Eleventh Amendment bars actions in federal court even where 28 U.S.C. § 1367, in general, authorizes supplemental jurisdiction). So while Plaintiff alleges he "has properly filed all necessary state tort claims regarding [his] injuries," Filing 1 at 9, Plaintiff cannot pursue his state-law tort claims in this Court; rather, he must bring such claims in state court.

Accordingly, the Court will dismiss Plaintiff's state-law tort claims without prejudice.

## IV. JENDA'S MOTION TO DISMISS

Defendant Jenda filed a Motion to Dismiss on January 22, 2024, arguing that Plaintiff's Complaint should be dismissed without prejudice for failure to serve Jenda within ninety days of the date the Complaint was filed as required by Federal Rule of Civil Procedure 4(m). Filing 7. The Court construes Jenda's motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. *See* 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1353 (3d ed.) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.").

15

Plaintiff is proceeding in forma pauperis in this matter, and the Court conducts pre-service screening of complaints filed by both non-prisoners and prisoners proceeding in forma pauperis. *See* 28 U.S.C.A. § 1915(e)(2); *Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016) ("Although some district courts have limited section 1915(e)(2)(B)(ii) pre-service dismissal to litigants who are prisoners, . . . all of the circuit courts to address the issue have held that nonprisoner complaints can be screened and dismissed pursuant to section 1915(e)(2)(B).") (citing *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006); *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005); *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) *overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)). When this Court granted Plaintiff leave to proceed in forma pauperis, the Court specifically advised Plaintiff "that the next step in his case will be for the Court to conduct an initial review of his claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2)" and the review would be conducted "in its normal course of business." Filing 6.

As the Court has now conducted its initial review and determined that Plaintiff's claims may not yet proceed to service of process, the Court will deny Jenda's Motion to Dismiss without prejudice to reassertion. *See Bell v. Bryson*, No. 8:07CV267, 2007 WL 2822755 (D. Neb. Sept. 25, 2007) (denying defendant's Rule 12(b)(5) motion to dismiss filed prior to Court's pre-service screening of pro se plaintiff's complaint under 28 U.S.C. § 1915(e)(2) and giving plaintiff leave to file an amended complaint). Pending Plaintiff's amendment of his Complaint to assert claims upon which relief may be granted and the Court directing summons to issue, no action is required of Defendant Jenda.

16

## V. CONCLUSION

Upon initial review, the Court concludes Plaintiff's Complaint fails to state a plausible claim for relief against any of the named Defendants. The University of Nebraska and UNL are not proper defendants and will be dismissed from this action. Plaintiff's claims for damages under 42 U.S.C. § 1983 against all remaining Defendants are barred by sovereign immunity as Plaintiff has sued only the State of Nebraska, state agencies, or state actors in their official capacities. Plaintiff's Complaint also fails to state claims under Title VI, Title IX, or Section 1557 against any Defendant, and his state-law tort claims must be dismissed without prejudice as such claims must be brought in state court pursuant to the STCA.

On the Court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint to allege a substantive due process claim against Locken in her individual capacity and to allege plausible Title VI, Title IX, and/or Section 1557 claims against specific, named defendants. The amended complaint must specify in what capacity the defendants are sued, must identify each defendant by name, and must set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. To be clear, Plaintiff's amended complaint must restate the relevant allegations of his Complaint, Filing 1, and any new allegations. Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review

17

of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) after he files an amended complaint which addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1. Defendants University of Nebraska and University of Nebraska-Lincoln are dismissed from this action as they are not proper defendants, and the Clerk of the Court is directed to remove these two Defendants as parties to this action.

2. Plaintiff's state-law tort claims are dismissed without prejudice to reassertion in state court.

3. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must identify each defendant by name and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendants' actions harmed him.

4. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Complaint, Filing 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

5. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files an amended complaint.

6. Defendant Jenda's Motion to Dismiss, Filing 7, is denied without prejudice to reassertion of their right to assert a defense pursuant to Federal Rule of Civil Procedure 12(b)(5) should this matter proceed to service of process and Plaintiff fails to properly effect service on Defendant Jenda.

7. The Clerk of Court is directed to set a pro se case management deadline using the following text: September 25, 2024: deadline for Plaintiff's amended complaint.

Dated this 26th day of August, 2024.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Senior United States District Judge