IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NATHAN JAMES ARENTSEN,

Plaintiff,

vs.

STATE OF NEBRASKA,  NEBRASKA
DEPARTMENT OF HEALTH &
HUMAN SERVICES,  BOARD OF
REGENTS OF THE UNIVERSITY OF
NEBRASKA,  PARADIGM, INC.,
JENDA FAMILY SERVICES, ABBIE
MARIE LOCKEN,  NEBRASKA
CHILDREN'S COMMISSION, and
OMNI BEHAVIORAL HEALTH,

Defendants.

**4:23CV3131**

**MEMORANDUM AND ORDER**

This matter is before the Court upon review of Plaintiff's Amended Complaint, Filing No. 11, Defendant Jenda Family Services, LLC's Motion to Dismiss, Filing No. 12, Defendant Omni Behavioral Health's Motion for Enlargement of Time, Filing No. 15, and Plaintiff's Motion for Appointment of Counsel, Filing No. 17. For the reasons that follow, Plaintiff's Amended Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim for relief, the Motion to Dismiss will be granted, and the remaining motions will be denied.

## I. BACKGROUND

Plaintiff filed his Complaint on July 19, 2023, seeking damages against the State of Nebraska, Nebraska Department of Health and Human Services ("DHHS"), the Board of Regents of the University of Nebraska ("Board of Regents"), the University of Nebraska, the University of Nebraska-Lincoln

("UNL"), three DHHS contractors—Paradigm, Inc. ("Paradigm"), Omni Inventive Care, and Jenda Family Services, LLC ("Jenda")—and a therapist employed at Paradigm, Abbie Locken ("Locken"). The Court conducted an initial review of the Complaint (the "Initial Review Order") and concluded Plaintiff's Complaint failed to state a plausible claim for relief against any of the named defendants. Filing No. 10. Specifically, the Court determined that the University of Nebraska and UNL were not proper defendants and must be dismissed; Plaintiff's claims for damages under 42 U.S.C. § 1983 against all remaining defendants were barred by sovereign immunity as Plaintiff sued only the State of Nebraska, state agencies, or state actors in their official capacities; and Plaintiff's state-law tort claims must be brought in state court pursuant to the Nebraska State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209, *et seq.*  The Court gave Plaintiff leave to file an amended complaint to allege a substantive due process claim against Locken in her individual capacity and to allege plausible claims against specific, named defendants under Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d *et seq*., Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, and/or Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116.  Filing No. 10 at 17.

Plaintiff timely filed his Amended Complaint on September 25, 2024. Filing No. 11. Shortly thereafter, on October 9, 2024, Jenda filed its Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Filing No. 12, and a supporting brief, Filing No. 13. On October 16, 2024, defendant Omni Behavioral Health d/b/a Omni Inventive Care ("Omni") filed its Motion for Enlargement of Time, seeking an extension of time to file a response or answer to Plaintiff's Amended Complaint given that Plaintiff had filed an "identical action[]" in the District Court of Lancaster County,

Nebraska, in case number CI24-3416. Filing No. 15. Plaintiff filed his Motion for Appointment of Counsel on October 18, 2024, Filing No. 17, and a brief in opposition to Jenda's Motion to Dismiss on October 30, 2024, Filing No. 19. Jenda filed a reply brief on November 6, 2024. Filing No. 21.

The Court now conducts an initial review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2), and will also consider Jenda's Motion to Dismiss in conjunction with this review. The Court will also address Omni's and Plaintiff's pending motions.

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff again names the State of Nebraska, DHHS, the Board of Regents, Paradigm, Omni, Jenda, and Locken as defendants and also names Nebraska Children's Commission ("Children's Commission") as an additional defendant (collectively "Defendants"). Filing No. 11 at 1. DHHS and the Children's Commission are agencies of the State of Nebraska, and Plaintiff alleges DHHS' Division of Children and Family Services ("CFS") contracted Paradigm, Omni, and Jenda to provide services to Plaintiff. Filing No. 11 at 4–5. Plaintiff seeks damages against Defendants pursuant to 42 U.S.C. § 1983 and Section 1557. Filing No. 11 at 25–28. Plaintiff alleges the following in support of his claims:

On April 27, 2019, Plaintiff was violently domestically assaulted by his then-spouse, Perla Vasquez ("Vasquez"), in their residence in Lincoln, Nebraska. Plaintiff filed a police report with the Lincoln Police Department ("LPD") on April 29, 2019, in which he "described ongoing, life-threatening domestic violence perpetrated by Vasquez against him dating back to January 24, 2017," which included acts of violence and aggression in the presence of Plaintiff's and Vasquez's one-year-old daughter. Filing No. 11 at 5. On or about

3

April 29, 2019, LPD notified CFS about Plaintiff's police report by filing a Child Abuse and Neglect Report through CFS' Child Abuse and Neglect Hotline.

From approximately April 29, 2019, to May 9, 2019, CFS assigned CFS employee Courtney Pendleton ("Pendleton") to a newly opened child abuse and neglect case for Plaintiff's daughter. Sometime on or before May 9, 2019, Plaintiff met with Pendleton at the CFS office in Lincoln, Nebraska, and detailed the domestic violence Plaintiff had suffered and the child abuse and neglect suffered by his daughter. At that meeting, it was agreed that Plaintiff and Vasquez would receive Intensive Family Preservation ("IFP") services, consisting of 20 hours of therapy per week inside Plaintiff's residence. Filing No. 11 at 6–7.

From May 10, 2019, to October 8, 2019, CFS contracted Omni and Paradigm to provide IFP services to Plaintiff, Vasquez, and their daughter. CFS also contracted Jenda to provide Family Support services to Plaintiff, Vasquez, and their daughter. The services were performed sequentially over that time period with Omni providing services first, then Jenda second, and then Paradigm third. Also during this same time period, CFS assigned Julie Ernst ("Ernst") as the caseworker for Plaintiff's daughter's case. Ernst told Plaintiff during her first visit to Plaintiff's residence on June 5, 2019, that Ernst was supervising and coordinating all CFS and CFS-contracted services delivered to Plaintiff, Vasquez, and their daughter.

"CFS paid Omni, Jenda, and Paradigm for their services from federal funds that CFS received through Title IV-E of the Social Security Act (42 U.S.C. § 670 et seq.) (Title IV-E)." Filing No. 11 at 8. CFS also used Title IV-E funds to pay the University of Nebraska-Lincoln's Center on Children, Families and the Law ("CCFL") for the cost of providing mandatory CFS employee training to Pendleton and Ernst, including required training on

4

domestic violence. "The CCFL training modules on domestic violence that Pendleton and Ernst completed were sexually discriminatory against male victims of domestic violence. The materials stated that if a man '[b]elieves he is the victim' of domestic violence, he should be assumed to be 'the batterer.'" Filing No. 11 at 8. Pendleton and Ernst completed the CCFL training modules on domestic violence prior to being assigned to Plaintiff's daughter's case. With respect to domestic violence training for CFS-contracted service providers, CFS Southeast Service Area Administrator Elizabeth Buhr expressed concern to other CFS employees on May 16, 2019, "that CFS-contracted service providers were not adequately trained about domestic violence." Filing No. 11 at 7.

On June 5, 2019, Omni employee Sandy Young ("Young") conducted her first IFP session with Plaintiff and Vasquez at their residence. Young asked Vasquez what she wanted from Plaintiff, and Vasquez responded that she wanted a "green card." Filing No. 11 at 9. Young then asked Plaintiff to sponsor Vasquez for a green card through the law firm where he worked, dismissing Plaintiff's unwillingness to do so due to Vasquez's past violent and cruel behavior toward him, saying, "Well, we'll get into that later." Filing No. 11 at 9. However, Young later told Plaintiff in the June 5 session and in numerous IFP sessions that followed that "Plaintiff was forbidden from discussing or referring to either the domestic violence which Vasquez perpetrated against him or the child abuse and neglect suffered by Plaintiff's daughter" because "IFP services required leaving discussions of those events in the past." Filing No. 11 at 10. Omni-employed therapist Jessica Quy ("Quy") similarly forbid Plaintiff from discussing the domestic violence and child abuse and neglect perpetrated by Vasquez. Plaintiff reported this to Ernst in repeated phone calls from June 5, 2019, to June 16, 2019, telling Ernst that "the IFP services were inappropriate and ineffective" and asking Ernst to enroll Vasquez in anger

management courses as part of Ernst's supervision of his daughter's child abuse and neglect case. Filing No. 11 at 10. "Ernst declined to respond directly to any of Plaintiff's concerns about IFP by phone and instead sent a text message to Plaintiff asking him to 'give IFP a chance' and directing him to 'get some therapy to deal with your trauma.'" Filing No. 11 at 10.

Plaintiff also reported to Ernst in June 2019 that Young appeared to be providing extensive therapy services to Vasquez via extended phone calls, even though Young was not a licensed therapist. Ernst indicated Young "shouldn't be doing that" and promised to speak to Young about that behavior. Filing No. 11 at 10.

During an IFP session in June or early July 2019, "Young repeatedly directed Plaintiff to enroll his daughter in Catholic parochial school in the future when she becomes school-age," agreeing with Vasquez that Catholic parochial school was "the only responsible choice to educate Plaintiff's daughter" and criticizing Plaintiff's expressed intention to enroll his daughter in public school. Filing No. 11 at 11. Young also responded with sarcasm when Plaintiff inquired about her knowledge of the police report detailing the domestic violence Plaintiff had suffered and told Plaintiff that she did not believe he had ever been domestically assaulted by Vasquez and to "[p]lease leave [Vasquez] alone." Filing No. 11 at 11.

On July 11, 2019, Plaintiff was terminated from his full-time employment at Brown Immigration Law ("Brown") "without cause" and "was informed that he was terminated due to Plaintiff's decision at the time to not take the July 2019 bar exam." Filing No. 11 at 12. On July 18, 2019, Plaintiff and Vasquez attended the last IFP session that Omni was contracted to provide to them, which took place at the Omni office in Lincoln. During that session, Plaintiff stated to Young, Quy, and Omni CEO Dr. Bill Reay ("Reay")

that he had recently lost his job at Brown and that Omni's services seemed to have failed at addressing Vasquez's continuing violent and angry behavior, which Plaintiff proceeded to describe. Young, Quy, and Reay sat silently and did not respond to Plaintiff's statements. Plaintiff then called Young in late July 2019 and "stated that the IFP process had contributed to Plaintiff losing his job at Brown." Filing No. 11 at 12. Plaintiff also stated that he regretted contacting the police on April 29, 2019, regarding the domestic violence Plaintiff had suffered "because it had only resulted in the misconduct which Omni employees had perpetrated against Plaintiff. Young responded: 'I'm sorry you feel that way. I disagree, though, because you're the first person who's ever complained about my work.'" Filing No. 11 at 12.

CFS contracted with Jenda to provide Family Support services at Plaintiff's residence from late July to mid-August 2019. On only one occasion, Plaintiff called the Jenda employee assigned to provide the Family Support services to Plaintiff, Vasquez, and their daughter. During that phone call, the employee stated to Plaintiff that "he should stop participating in his own daughter's care and stop participating in the cleaning of his residence," he "should leave all childcare and cleaning to Vasquez," and he "should focus on finding employment and paying bills 'like the men's and women's roles in a more traditional family.'" Filing No. 11 at 13.

In early August, Ernst informed Plaintiff that CFS intended to provide an additional two months of IFP services to Plaintiff, Vasquez, and their daughter. CFS contracted Paradigm and Locken to provide these additional IFP services, and Ernst stated to Plaintiff, "I've worked with [Locken] before and I really like her." Filing No. 11 at 13. Plaintiff and Vasquez then met with Ernst, Locken, Paradigm employee Dicey Lucas ("Lucas"), and a trainee CFS employee on August 14, 2019, at their residence, and Ernst "invited Vasquez

7

to apologize to Plaintiff for domestically assaulting him." Filing No. 11 at 13. Vasquez briefly apologized for her multiple past domestic assaults of Plaintiff, and Ernst then asked Plaintiff if he would apply for Vasquez's green card. Plaintiff responded that it was his choice whether to do so or not, to which Ernst replied, "Well, [Vasquez] just did something for you. Now, I need you to help stabilize her life." Filing No. 11 at 13. Because Plaintiff felt pressured to comply by Ernst and the other CFS and Paradigm employees present, he replied that he would attempt to apply for Vasquez's green card.

From August 14 to October 8, 2019, Locken and Lucas provided IFP services in Plaintiff's residence. During these sessions, Locken often shouted at Plaintiff for interrupting her, for not remembering the last thing she told Plaintiff, and for not being quiet and listening to her. When Plaintiff mentioned negative statements that either Locken or Vasquez had made about Plaintiff, "Locken scowled and said angrily to Plaintiff: 'Are you done now? Can I talk now?'" Filing No. 11 at 14. During most of these in-home IFP sessions with Locken, Plaintiff stated that he was considering separating or divorcing from Vasquez. In response, Locken would become visibly frustrated and harshly state that they should "make some custody and parenting plans then." Filing No. 11 at 14. Locken's actions caused Plaintiff to be fearful for his daughter's safety in Vasquez's potential sole or shared custody so Plaintiff would indicate his willingness to continue in the marriage. Each time Plaintiff did so, Locken appeared satisfied with Plaintiff's response.

Also during the IFP sessions, Locken told Plaintiff not to discuss either the domestic violence or the child abuse and neglect perpetrated by Vasquez. Locken also stated "that he was not adequately appreciating Vasquez," and she was critical of Plaintiff's choices regarding his living and employment situation. Locken also expressed frustration with Plaintiff and Vasquez taking

up much of her time when she had "to deal with a lot of needier cases all day," Filing No. 11 at 15, and that she "hate[d] having to spend [her] time resolving [their] conflicts," Filing No. 11 at 16. When Plaintiff reminded Locken during one IFP session that Vasquez had domestically assaulted him on April 27, 2019, Locken responded, "That was four months ago. You have to let it go." Filing No. 11 at 15. Locken then admitted that she had previously perpetrated domestic violence against her ex-husband, which concerned Plaintiff as the domestic violence perpetrated against him was the reason for his daughter's child abuse and neglect case.

On September 27, 2019, during an IFP session in Plaintiff's residence, Plaintiff and Vasquez were seated next to each other on a couch with Locken seated across from them. When Vasquez began crying, Locken "guided Vasquez's head down into the center of Plaintiffs lap until Vasquez's head rested directly on Plaintiffs genital area" and her shoulders rested on top of Plaintiff's legs so that he could not move. Filing No. 11 at 16. Plaintiff felt intense fear and panic at this contact with Vasquez, which displayed in his frozen posture, tensed shoulders, and widened eyes, and "Locken then made a facial expression of impatience toward Plaintiff." Filing No. 11 at 16. Locken then grabbed Plaintiff's hand and forced him "to rub hard into the center of Vasquez's back from Vasquez's neck to Vasquez's bottom as Locken stated affectionate comments and instructed Plaintiff to repeat them." Filing No. 11 at 16. "Plaintiff remained tense and physically resisted Locken's grip on his hand and wrist throughout this assault," which lasted over a minute until Vasquez stopped crying and Locken released her grip on Plaintiff's hand and guided Vasquez's head up from Plaintiff's lap. Filing No. 11 at 16. Plaintiff immediately moved away from Vasquez into the corner of the couch and "felt traumatized, violated, and afraid." Filing No. 11 at 16.

Plaintiff filed a complaint about Locken to the DHHS Public Licensing Unit on March 25, 2022, which later led to the Nebraska Attorney General filing a petition for disciplinary action against Locken on April 15, 2024, based in large part on the September 27, 2019, incident involving Plaintiff. Pursuant to an Agreed Settlement, the allegations in the petition for disciplinary action were found true, which included findings that Locken's conduct was "immoral or dishonorable" and "fail[ed] to meet the standard of acceptable and prevailing practice of the profession in the treatment of . . . [Plaintiff and Vasquez]." Filing No. 11 at 25. Also as part of the Agreed Settlement, Locken's Independent Mental Health Practitioner license was suspended from June 21, 2024, to September 18, 2024, and her licenses were also placed on a three-year probation term. Filing No. 11 at 23.

On October 8, 2019, Paradigm concluded its IFP services for Plaintiff, but CFS employees, including Ernst and Pendleton, did not communicate to Plaintiff the status or outcome of his daughter's child abuse and neglect case. On January 1, 2020, Plaintiff sent a text message to Ernst informing her of Vasquez's continuing child abuse and neglect towards Plaintiff's daughter. Ernst responded that Plaintiff's daughter's case was already closed, Ernst would not act on Plaintiff's information, and Plaintiff could file a new Child Abuse and Neglect Report.

On August 26, 2020, Plaintiff fled with his daughter from the residence he shared with Vasquez and filed a police report, which led to LPD filing a Child Abuse and Neglect Report with CFS. On September 4, 2020, CFS employee Chantel Martin ("Martin") and her supervisor Cheyenne Bice ("Bice") called Plaintiff and challenged him on whether he had ever been domestically abused. In a later September 2020 phone call, Martin directed Plaintiff to "move into a homeless shelter, because you can get access to more

resources there [than through CFS]." Filing No. 11 at 18. When Plaintiff refused to move himself and his daughter into a homeless shelter during the COVID-19 pandemic as they had adequate financial resources to remain in the hotel where there were, Martin "responded with increasing frustration." Filing No. 11 at 18.

Plaintiff filed for divorce from Vasquez on September 9, 2020. Martin informed Plaintiff on September 30, 2020, that she had closed the new child abuse and neglect case for Plaintiff's daughter. When Plaintiff expressed his disappointment at this, Martin responded that she had a lot of cases to deal with and could not just spend time on Plaintiff's case and that, because Plaintiff had removed his daughter, "she seems safe" and Martin did not want CFS "to be involved in a custody dispute." Filing No. 11 at 18. Plaintiff eventually obtained sole legal and physical custody of his daughter, subject to Vasquez's parenting time, and his divorce action and custody proceedings are closed. Filing No. 11 at 19.

Plaintiff claims that, as a result of the acts alleged in the Amended Complaint, he "sustained injuries which are evidenced by Plaintiff's diagnosis on February 10, 2021, with major depression due to trauma and Plaintiff's continued suffering from that condition, as well as Plaintiff's economic injuries" and the substantial "overall personal and professional impact upon Plaintiff." Filing No. 11 at 25.

### III. APPLICABLE LEGAL STANDARDS

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). "[B]ecause the language of § 1915(e)(2)(B)(ii) tracks

11

the language of Federal Rule of Civil Procedure 12(b)(6), the Court applies Rule 12(b)(6) standards when evaluating dismissals under § 1915(e)(2)(B)(ii)." *Jackson v. Dep't of Hum. Servs. Background Stud.*, No. 15-CV-504, 2015 WL 4636682, at *3 (D. Minn. Aug. 4, 2015), *aff'd*, No. 15-3361 (8th Cir. Jan. 7, 2016).

"Under either 28 U.S.C. § 1915(e)(2)(B)(ii) or Rule 12(b) of the Federal Rules of Civil Procedure, the court must construe the allegations of a complaint in the light most favorable to the plaintiff." *Tyler v. Green*, No. 8:07-CV-124, 2007 WL 3124533, *4 (D. Neb. Oct. 22, 2007). Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## IV. DISCUSSION

While Plaintiff's experience in receiving services from several of the Defendants is certainly concerning and unfortunate, as explained below, the Amended Complaint fails to allege facts stating a plausible federal claim for relief and will be dismissed.

12

**A. 42 U.S.C. § 1983**

As in his initial Complaint, Plaintiff identifies 42 U.S.C. § 1983 as a basis for his federal claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). As explained below, Plaintiff's section 1983 claims cannot proceed against the State of Nebraska or the State agencies named as defendants, and Plaintiff fails to state a plausible section 1983 claim against Omni, Jenda, Paradigm, and Locken.

**1. State and State Agency Defendants**

The State of Nebraska, DHHS, the Children's Commission, and the Board of Regents are not suable "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989); *Lawton v. Bd. of Regents of Univ. of Neb.*, No. 4:21CV3162, 2022 WL 2047600, at *8 (D. Neb. June 7, 2022) ("The Nebraska Supreme Court has made clear that '[t]he Board of Regents . . . [is] entitled to sovereign immunity and do[es] not qualify as [a] 'person[ ]' under § 1983.'" (quoting *Potter v. Bd. of Regents of the Univ. of Neb.*, 844 N.W.2d 741, 749–50 (Neb. 2014)). In addition, for the reasons stated in the Initial Review Order, Plaintiff's section 1983 claims against the State, DHHS, the Children's Commission, and the Board of Regents are barred by the State's Eleventh Amendment sovereign immunity. See Filing No. 10 at 8–9. As such, Plaintiff's section 1983 claims against the State, DHHS, the Children's Commission, and the Board of Regents must be dismissed.

**2. Substantive Due Process Claim**

Liberally construed, Plaintiff appears to allege a substantive due process claim under 42 U.S.C. § 1983. Specifically, Plaintiff alleges "Defendants

13

exercised deliberate indifference to Plaintiff" based on CFS contracting with providers who were inadequately trained regarding domestic violence, CFS employees being inadequately trained, and CFS employees ignoring Plaintiff's concerns and requests and failing to inform him of the closure of his daughter's child abuse and neglect cases in a timely manner. Filing No. 11 at 25–27. However, as explained above, DHHS and its CFS division are immune from Plaintiff's section 1983 claims. To the extent Plaintiff alleges a substantive due process claim against Omni, Jenda, Paradigm, and Locken,[1] the Court finds the Complaint fails to allege sufficient facts to state such a claim against these defendants.

To establish a substantive due process violation, a plaintiff must show that the defendant violated one or more fundamental constitutional rights and that the defendant's conduct was shocking to the contemporary conscience. *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007). "In order to succeed, a complaint for a violation of substantive due process rights must allege acts that shock the conscience, and merely negligent acts cannot, as a constitutional matter, do that: To hold otherwise would trivialize the centuries-old principle of due process of law." *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000) (internal quotation marks and citation omitted). Further, "gross negligence is not actionable . . . under § 1983." *Id.* (internal quotation marks and citation omitted). "Conduct that is intended to injure in some way unjustifiable by any government interest is likely to be conscience shocking." *Rogers*, 152 F.3d at 797 (internal quotation marks and citation omitted). "Whether conduct shocks the conscience is a question of law." *Folkerts v. City*

---

[1] While Jenda disputes that it qualifies as a person acting under color of state law for purposes of section 1983, *see* Filing No. 13 at 10, the Court assumes, as it did in the Initial Review Order, that Omni, Jenda, Paradigm, and Locken are state actors based on Plaintiff's allegations that they were contractors for DHHS and CFS.

*of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013) (citing *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005)).

In the Court's Initial Review Order, the Court liberally construed Plaintiff's Complaint as alleging a substantive due process claim against Locken based on Plaintiff's allegations that Locken "sexually assaulted" Plaintiff in his home during an IFP treatment session and gave Plaintiff leave to amend his Complaint to allege his substantive due process claim against Locken in her individual capacity. *See* Filing No. 1 at 8; Filing No. 10 at 6–8. While Plaintiff's Amended Complaint appears to reassert a substantive due process claim, he has abandoned his claim that Locken "sexually assaulted" him and Plaintiff's factual allegations establish that Locken's conduct towards him did not constitute a "sexual assault" as that term is understood and applied in cases finding actionable due process claims based on a state actor's alleged infliction of sexual abuse. *See, e.g.*, *Hawkins v. Holloway*, 316 F.3d 777, 785 (8th Cir. 2003) (finding "sheriff's allegedly repeated intentional touching of [female employee's] breasts to constitute a violation of her bodily integrity sufficient to support a substantive due process claim); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795 (8th Cir. 1998)) (police officer's rape of woman violated her substantive due process rights).

Here, Plaintiff's allegations detailing Locken's conduct in the provision of IFP services and her role in the September 27, 2019, incident, while certainly describing "unprofessional" and "immoral or dishonorable conduct," Filing No. 11 at 25, fail to suggest the type of conscience-shocking conduct sufficient to state a violation of Plaintiff's substantive due process rights. *See* *Hawkins*, 316 F.3d at 785 ("Not every inappropriate or unwanted touching by a public official, even if accompanied by vulgar comments of a sexual nature, can amount to the "brutal and inhumane abuse of official power" necessary to demonstrate a

violation of an individual's bodily integrity sufficient to support a constitutional violation.") (citing cases); *Haberthur v. City of Raymore, Mo.*, 119 F.3d 720, 723 (8th Cir. 1997) ("Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under it."). As such, Plaintiff fails to state a plausible substantive due process claim against Locken upon which relief may be granted.

With respect to Omni, Jenda, and Paradigm (the "Contractor Defendants"), as corporations assumed to be acting under color of state law, they may only be held liable under section 1983 for their own unconstitutional policies. *Sanders v. Sears, Roebuck & Col.*, 984 F.2d 972, 975 (8th Cir. 1993) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "The test is whether there exists a policy, custom or action by those who represent official policy which inflicts an injury actionable under § 1983." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590–91 (8th Cir. 2004) (citing *Monell*, 436 U.S. at 694). Stated another way, to prove a policy, custom or action, Plaintiff must show "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the Contractor Defendants' employees; "[d]eliberate indifference to or tacit authorization of such conduct by [the Contractor Defendants'] policymaking officials after notice to the officials of that misconduct;" and he "was injured by acts pursuant to [the Contractor Defendants'] custom, i.e., that the custom was the moving force behind the constitutional violation." *Id.* at 590–91 (internal quotations and citations omitted).

Here, the Amended Complaint's allegations fail to suggest that Plaintiff's alleged injuries were the result of an unconstitutional policy or custom of Omni, Jenda, or Paradigm. At best, Plaintiff alleges the Contractor Defendants' employees were inadequately trained to handle domestic violence

16

issues, but no facts are alleged to suggest the Contractor Defendants were responsible for training the employees or failed to train them at all. Regardless, any alleged failure by the Contractor Defendants' to adequately train their employees raises only an inference of negligence, which is insufficient to state a claim for relief under section 1983. In addition, as with Locken's conduct, the Court concludes the conduct of Omni's employees, Young and Quy, and the Jenda employee assigned to Plaintiff's case does not constitute conscience-shocking conduct in violation of substantive due process. *See Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir. 2004) (determining that social workers' "failure to respond to two reports of sexual abuse and . . . failure to conduct a background check" of the children's relatives prior to placement was "not so outrageous or egregious as to shock the conscience and thus the failure to investigate did not violate [the children's] substantive due process rights"). The Amended Complaint's allegations, thus, fail to show that Omni, Jenda, and Paradigm were deliberately indifferent to, or tacitly authorized, any unconstitutional conduct, and Plaintiff's substantive due process claim against the Contractor Defendants must be dismissed.

### 3. Former 45 C.F.R. § 75.300(c)

In his brief in opposition to Jenda's Motion to Dismiss, Plaintiff argues that his section 1983 claims may proceed against Jenda based on the violation of "Plaintiff's right to be free from sex discrimination in Jenda's state-contracted performance of grants provided by the U.S. Department of Health and Human Services to the State of Nebraska under Title IV-B and Title IV-E." Filing No. 19 at 9. Specifically, Plaintiff claims Jenda's conduct violated 45 C.F.R. § 75.300(c),[2] a U.S. Department of Health and Human Services' regulation that, in August 2019, read:

---

[2] Plaintiff appears to mistakenly cite to "42 C.F.R. § 75.300(c)" in his brief. Filing No. 19 at 9.

(c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

Health and Human Services Grants Regulation, 81 Fed. Reg. 89393-01, at 89,395 (formerly codified at 45 C.F.R. § 75.300).[3] Plaintiff contends he may bring a claim under 42 U.S.C. § 1983 "to enforce Congress's spending provisions [in 45 C.F.R. § 75.300(c)] as a third-party beneficiary to those spending provisions." Filing No. 19 at 9. The Court disagrees.

To the extent Plaintiff relies on former 45 C.F.R. § 75.300(c) as the basis for section 1983 liability, he cites to no authority, and the Court could locate none, establishing that this former regulation setting forth HHS' public policy requirement against discrimination in the administration of HHS programs, activities, and services confers any individually enforceable rights on Plaintiff. See Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 180 (2023) ("Statutory provisions must unambiguously confer individual federal rights" to be enforceable under § 1983. (emphasis in original) (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (2002))). "For Spending Clause legislation in particular, [the Supreme Court has] recognized that 'the typical remedy for state noncompliance with federally imposed conditions is not a private cause of

---

[3] The current version of the regulation simply provides:

(c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or otherwise subjected to discrimination in the administration of HHS programs, activities, projects, assistance, and services, to the extent doing so is prohibited by Federal statute.

45 C.F.R. § 75.300(c).

action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" *Id.* at 183 (quoting *Gonzaga*, 536 U.S. at 280 (internal quotation marks and citation omitted). The Court has "rejected § 1983 enforceability where the statutory provision 'contain[ed] no rights-creating language'; had 'an aggregate, not individual, focus'; and 'serve[d] primarily to direct the [Federal Government's] distribution of public funds.'" *Id.* at 183–84 (quoting *Gonzaga*, 536 U.S. at 290). The Court is not convinced that former 45 C.F.R. § 75.300(c), as it was amended in 2016, "surmounts [the] significant hurdle" for establishing unambiguous conferral of individual federal rights enforceable under 42 U.S.C. § 1983. *See Id.* at 184. The Court, therefore, concludes Plaintiff's section 1983 claims premised on former 45 C.F.R. § 75.300(c) fail to state a claim upon which relief may be granted.

**B. Section 1557**

Plaintiff reasserts a federal cause of action under Section 1557 of the Patient Protection and Affordable Care Act, which prohibits discrimination and the denial of benefits on the basis of sex, among other protected grounds, "under any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). Section 1557 incorporates Title IX to prohibit discrimination on the basis of sex, and the enforcement mechanisms provided for and available under Title IX apply for purposes of a violation of Section 1557. *Id.* Title IX, in turn, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. To state a sex discrimination claim under Section 1557, Plaintiff must allege: "(1) [Each] Defendant is a health program that receives federal financial assistance; (2) Plaintiff was excluded from participation in or denied the benefit of the program; and (3) the exclusion was on a ground prohibited by Title IX, that

is—it was on the basis of sex." *Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956, 963–64 (E.D. Mo. 2022).

Here, Plaintiff alleges the following with respect to his Section 1557 "cause of action":

> 95.    Locken was a licensed therapist, and thereby a healthcare provider, whose services were paid with federal funds from the federal Department of Health of Human Services and the Nebraska DHHS–CFS. Locken's personal misconduct against Plaintiff and other sex discrimination against him falls within Section 1557 of the Affordable Care Act.

> 96.    Quy was a licensed therapist, and thereby a healthcare provider, whose services were paid with federal funds from the federal Department of Health of Human Services and the Nebraska DHHS–CFS. Quy's sex discrimination against Plaintiff falls within Section 1557 of the Affordable Care Act.

Filing No. 11 at 27.

For the same reasons as the Court noted in the Initial Review Order, *see* Filing No. 10 at 12 n.3, neither Locken nor Quy, who is not named as a defendant, are proper Section 1557 defendants to the extent Plaintiff seeks to hold them liable in their individual capacities. Both Locken and Quy are alleged to be employees of Paradigm and Omni, respectively, and only Paradigm and Omni are alleged to have received federal financial assistance. Moreover, Title IX, the civil rights predicate statute for Plaintiff's Section 1557 claim, "'prohibits discrimination by federal grant recipients,' but does not 'authoriz[e] suit against . . . individuals.'" *Libault v. Mamo*, No. 4:22-CV-3096, 2023 WL 3011259, at *6 (D. Neb. Mar. 20, 2023) (quoting *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007) and *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S.

246, 257 (2009)). Thus, Plaintiff's Section 1557 claim against Locken and Quy in their individual capacities fails and must be dismissed.

Plaintiff does not appear to assert his Section 1557 claim directly against the State of Nebraska, the Children's Commission, or the Board of Regents, but, to the extent he does, the facts alleged with respect to these defendants fail to state a plausible claim for relief. Plaintiff does not allege that the State or the Children's Commission is a health program or activity receiving federal financial assistance. Similarly, to the extent Plaintiff seeks to hold the Board of Regents liable under Section 1557, the Amended Complaint fails to correct the pleading deficiencies of the original Complaint. That is, Plaintiff does not allege facts showing the Board of Regents or UNL's CCFL were involved in the provision of any health-related services to Plaintiff, and there are no facts from which it can be inferred that Section 1557's antidiscrimination provisions apply to these defendants. Nor do Plaintiff's allegations establish that he was excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity offered by the Board of Regents in violation of Title IX. Accordingly, Plaintiff's Section 1557 claim against the State of Nebraska and the Board of Regents, to the extent he alleges one, must be dismissed for failure to state a claim upon which relief may be granted.

Given their most liberal construction, Plaintiff's allegations suggest DHHS, Omni, Jenda, and Paradigm were engaged in the provision of therapeutic services to Plaintiff for which they received federal financial assistance, that Plaintiff was denied the benefit of these services in that he was prevented from discussing the domestic violence and child abuse and neglect that precipitated his need for the services, and the reason these defendants denied him the benefit of their therapeutic services was based on

21

sex in that he did not fit the traditional gender stereotypes associated with domestic violence victims. Assuming, without deciding, that Plaintiff's allegations state a claim for relief under Section 1557, Plaintiff's claim fails as Plaintiff cannot recover damages for the injuries he alleges under Section 1557.

Plaintiff alleges "[a]s a direct and proximate result of the acts herein stated, Plaintiff has sustained injuries which are evidenced by Plaintiff's diagnosis on February 10, 2021 with major depression due to trauma and Plaintiff's continued suffering from that condition, as well as Plaintiff's economic injuries." Filing No. 11 at 25. Plaintiff's "economic injuries" are premised on Plaintiff's inability to "earn the same income or enjoy the same professional opportunities that Plaintiff would have earned and enjoyed in the absence of Defendants' actions." Filing No. 11 at 4. Plaintiff alleged, without any factual support, that "the IFP process [with Omni] had contributed to Plaintiff losing his job at Brown," and, "[s]ince 2019, Plaintiff has never received a year of income equal to his past annual compensation at Brown." Filing No. 11 at 12. However, as alleged in his Amended Complaint, Plaintiff's employment at Brown "was terminated due to Plaintiff's decision at the time to not take the July 2019 bar exam." Filing No. 11 at 12. Plaintiff does not allege any facts from which the Court can reasonably infer that Defendants' conduct caused his economic losses. As such, the only compensable injuries Plaintiff plausibly alleges Defendants caused are his diagnosis for major depression due to trauma and his feelings of fear and humiliation.  But, damages for emotional harm and distress "are not recoverable under the anti-discrimination provisions of [Section 1557]." *Kulwicki v. Aetna Life Ins. Co.*, 720 F. Supp. 3d 108, 113 n.3 (D. Conn. 2024) (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022)). Accordingly, Plaintiff's

Section 1557 claim, to the extent one is stated against any of the Defendants, must be dismissed.

## V. OTHER PENDING MOTIONS

Given the Court's findings, above, upon review of Plaintiff's Amended Complaint, Jenda's Motion to Dismiss, Filing No. 12, is granted, and Omni's Motion for Enlargement of Time, Filing No. 15, is denied as moot as Plaintiff's Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff filed a Motion for Appointment of Counsel. Filing No. 17. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time. The Court has determined that this matter must be dismissed so there is no need for counsel to assist Plaintiff with further prosecution of his claims in this Court. To the extent Plaintiff may desire counsel to assist with the prosecution of any possible appeal, the Court finds appointment is not warranted as Plaintiff has a Juris Doctor degree, Filing No. 11 at 3, and is clearly capable of presenting his claims and advancing any arguments he may have on appeal. Plaintiff's request for counsel is denied.

## VI. CONCLUSION

Upon review pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes Plaintiff's Amended Complaint fails to state a plausible claim for relief against the Defendants and must be dismissed without leave to amend as the Court finds further amendment would be futile. For the same reasons, the Court will grant Jenda's Motion to Dismiss. The other pending motions are denied.

IT IS THEREFORE ORDERED that:

1.    This matter is dismissed for failure to state a claim upon which relief may be granted.

2.    Defendant Jenda Family Services, LLC's Motion to Dismiss, Filing No. 12, is granted.

3.    Defendant Omni Behavioral Health's Motion for Enlargement of Time, Filing No. 15, is denied as moot.

4.    Plaintiff's Motion for Appointment of Counsel, Filing No. 17, is denied.

5.    The Court will enter a separate judgment.

Dated this 29th day of September, 2025.

BY THE COURT:

_John M. Gerrard_

John M. Gerrard
Senior United States District Judge

24